IN THE MATTER OF THE APPLICATION OF DAVID
H. FOR ADMISSION TO THE BAR OF MARYLAND

[September Term, 1977.]

*Decided October 23, 1978.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ■LEVINE, ELDRIDGE, ORTH and COLE, JJ.

MURPHY, C. J., delivered the opinion of the Court. SMITH and DIGGES, JJ., concur in the result and DIGGES, J., filed a concurring opinion in which SMITH, J., joins at page 641 *infra.*

Whether the applicant in this case possesses the requisite moral character fitness that would justify his admission to the Bar of Maryland is the question here presented for our determination.

The Character Committee for the Third Judicial Circuit, after an evidentiary hearing held pursuant to Rule 4 of the Rules Governing Admission to the Bar of Maryland, concluded that the applicant did not possess the requisite moral character and so advised the State Board of Law Examiners. At the applicant's request, the Board, acting pursuant to Rule 4, held a de novo evidentiary hearing and concluded, contrary to the Character Committee, that the applicant had demonstrated his good moral character. The Board recommended that we approve his admission. We set the matter for a hearing before the full Court, at which time the applicant appeared, without counsel, and was extensively questioned.

The record discloses that the applicant filed his application for admission to the Bar of Maryland on March 25, 1976. His Character Questionnaire revealed that he had been charged with five criminal offenses. The first charge, in July of 1968, was for breaking and entering an apartment in a complex in

which the applicant held a summer position. He was then 18 years of age. The court found him not guilty of the offense and the arrest record was later expunged. The second charge, in March of 1970, was for an alleged assault and battery upon the applicant's father, growing out of a family dispute. The applicant was then 19 years old and a college student. The charge was later dropped and the arrest record expunged.

In April of 1971, when the applicant was 20 and a senior in college, he was charged with aiding and abetting shoplifting. As to this offense, the applicant testified before the Character Committee and the Board that he had driven two young men with whom he was only casually acquainted to a store at their request and agreed to wait for them. Shortly thereafter, he observed the two men running from the store carrying a TV set, being pursued by several other individuals. The applicant said he was "dumbfounded" by what he observed and had "no idea what was going on." He was scared and began to drive away from the scene. One of the fleeing young men, however, jumped into the applicant's car and told him to drive away, which he did. The applicant was later arrested and charged with participation in the offense. He said that he explained to the police that he was not involved in the crime and the charge against him was later nol-prossed. The applicant testified for the State at the trial of his two acquaintances, and identified them as the individuals he had driven to the store. The applicant subsequently sought to have the arrest record expunged, but his petition was denied.

In October of 1971, when the applicant was 21 years of age and a senior in college, he was charged with stealing a watchband worth $12.95 from a department store. His plea of nolo contendere to the offense was accepted by the court. He was placed on supervised probation for one year and required to report to his probation officer each month. He admitted his guilt of this offense at the hearings before the Character Committee and the Board. He also admitted that "every now and then" he had stolen other items from stores, for which he was never charged. Some of the stolen items were for his own use, he said, while others he gave away or sold.

While on probation for the theft offense, the applicant, in February of 1972 — after he had graduated from college — was charged with attempting to steal a tape deck from an automobile. Concerning this incident, the applicant testified before the Character Committee that he and a friend broke into the car by "jimmying" the lock, whereas he told the Board that the car he entered had been unlocked. In any event, the police observed the crime in progress and the applicant was arrested. He entered a plea of nolo contendere which once again was accepted by the court. He was fined $100, and his probationary status was continued. The applicant admitted both to the Character Committee and to the Board that on a number of earlier occasions he had broken into automobiles to steal tape decks. At the hearing before us, the applicant candidly admitted that "quite a few times" he had stolen items for which he had not been arrested. He said that his thefts from stores were less frequent than his thefts of tape decks from automobiles. As to the latter offenses, the applicant stated that he carried tools for disassembling the tape decks, and that to this extent at least the thefts were planned in advance.

The applicant testified at the hearings before the Character Committee and the Board that in July of 1972, following graduation from college, he was employed as a computer programmer by the Social Security Administration. In his application for employment he stated under oath that he had not been convicted of any criminal offenses. He explained that his negative answer to this inquiry was based upon advice of two different lawyers that the court's acceptance of his nolo contendere pleas did not result in convictions of the offenses charged. That the applicant had in fact been so advised by counsel was evidenced by letters received by the Board from each of the lawyers consulted. Shortly after he was employed, however, the applicant's employer, acting through the Civil Service Commission, sought to remove him from his position on the ground that he had made false representations as to his criminal record on his employment application. After several administrative hearings, the applicant was retained in his employment.

The applicant was admitted to law school as a night student in September of 1973.[1] He had decided to seek admission to law school during his senior year at college and had taken his qualifying law school aptitude tests in the fall of 1971, prior to his arrests for the watchband theft and tape deck offense.

The applicant graduated from law school in December of 1976. He received several law school awards and honors. A number of letters from friends, law school administrators and teaching personnel, attesting to the applicant's good moral character, were received in evidence at the hearing before the Board. The record indicates that the applicant has not been involved in any criminal conduct since his arrest in early 1972.

The applicant told the Character Committee that his criminal conduct "was a result of my stupidity and immaturity." He said that he changed the direction of his life after he graduated from college and went to work, and that he was now fully rehabilitated. He gave the Committee this insight into his past criminal conduct:

> "The more I think about it, what I come up with is, and I think all children steal, I think every child at one time or another takes something from a store, something along those lines, and ninety-nine times out of a hundred, he gets caught, and that stops him. I didn't get caught until I was twenty-one, twenty-two years old, and maybe the reason I didn't stop the first time is because not a whole lot happened. It was more of a slap on the wrist, and maybe that's, really, all I can come up with for why I stopped then."

Testifying before the Board, the applicant attributed his rehabilitation to a "growing up process." He said that "getting caught was just the catalyst that turned me around," although he speculated that if he had not gotten caught, he might have continued his criminal activity.

---

1. In response to a question on his law school application as to whether he had been "charged" with any criminal offenses, the applicant fully revealed his criminal record.

In recommending the applicant's admission to the Bar, the Board said:

"The applicant was born on June 11, 1950, in the District of Columbia. After high school graduation, he attended American University in Washington from September, 1968, to December, 1971, where he was awarded a B.S. in Business Administration. He was a student at the University of Baltimore Law School from September, 1973, to his graduation in December 1976. At the University of Baltimore, he was given a Merit Award, the Dean Curtis Award, and was elected to Who's Who Among Students. [The applicant] is presently employed by the Social Security Administration as a computer programmer, and has been so employed since 1972.

"The Board's concern mirrors that of the Character Committee. What motivated the applicant to break the law, and what assurance does he give that the recurrence is unlikely? A review of the testimony before us will attest that we probed this. . . . The applicant has been candid and forthright. He characterizes his conduct leading to the arrests as stupid and immature. (Letter of 12/29/76). He rejects the broken-home syndrome. . . . Just as firmly he believes he has put all behind him and is set on a new course. . . . The year 1972 appears to be the turning point. There have been no criminal violations, other than minor traffic violations, since then. In 1972, he became gainfully employed for the first time. Also in 1972, he entered law school.

"While it is questionable that at the time of his criminal involvement [the applicant] had the requisite character to practice law in this State, the issue is whether there has been rehabilitation in the intervening time. Our conclusion is that while the applicant may have difficulty in articulating it, he fully understands that his conduct during the years

1968-1972 at times showed that he was morally weak, but at the same time we believe that he has overcome this. As to the likelihood of a recurrence, we are of the opinion that his actions since 1972 speak as elegantly, or more so, than his oral testimony, and that the risk is slight. In short, we are satisfied that [the applicant] has been rehabilitated.

"We are impressed too with the awards and extracurricular activities that [the applicant] has been involved in or awarded since 1972. He has worked with Montgomery County Mental Health Association on a volunteer basis and has received a certificate of commendation for that. He was the American Bar Association representative from the law school to the Law Student Commission of the American Bar Association. He was president of the Student Bar Association and was treasurer one year. As indicated earlier, he has received awards from the school including the Dean Curtis award which is the highest award given by the school."

\* \* \*

"For the aforegoing reasons, the Board recommends that [the applicant] be approved for admission to the Bar of Maryland as to character. The applicant has not yet taken the Bar Examination and is thus not qualified for admission at this time."

Rule 2 d of the Rules Governing Admission to the Bar of Maryland provides that the applicant "shall at all times have the burden of proving his good moral character before the Character Committee, the Board and the Court . . . ." We said in *In re Application of Allan S.,* 282 Md. 683, 387 A. 2d 271 (1978), that there is no litmus test by which to determine whether an applicant for admission to the Bar possesses good moral character. Where, as here, an applicant for admission to the Bar is shown to have committed crimes, the nature of such offenses must be taken into consideration in assessing whether his present moral character is good. *Id.* at 690. As

we said in *Allan S.,* a prior conviction is not conclusive of a lack of present good moral character, particularly where the offenses occurred a number of years prior to the applicant's request for admission, but such criminal conduct adds to the applicant's burden of establishing present good character by requiring convincing proof of his full and complete rehabilitation. In that case, we made these additional observations (omitting citations):

> "Thus, a prior conviction must be taken into account in the overall measurement of character and considered in connection with other evidence of subsequent rehabilitation and present moral character. . . . It is not without significance in this regard, as bearing upon moral fitness, that an applicant for admission to the bar refuses to admit his criminal conduct. . . .
>
> "The ultimate test of present moral character, applicable to original admissions to the Bar, is whether, viewing the applicant's character in the period subsequent to his misconduct, he has so convincingly rehabilitated himself that it is proper that he become a member of a profession which must stand free from all suspicion. . . . That the absence of good moral character in the past is secondary to the existence of good moral character in the present is a cardinal principle in considering applications for original admission to the Bar. . . ." 282 Md. at 690, 387 A. 2d at 275.

In *Allan S.,* a majority of the Court, contrary to the conclusion of the Board, found convincing proof of the applicant's full and complete rehabilitation during an extended period following his commission of two petty theft offenses, one of which postdated his graduation from law school. There, the criminal acts had occurred approximately 11 and 7 years respectively prior to the Board's decision on the applicant's request for admission, and the rehabilitative evidence presented at the hearing was particularly cogent and strong. In addition to letters from a number of members

of the legal and lay community expressing unqualified trust in the applicant's present moral character, a former employer holding a high government position testified in his behalf at the Board hearing.

While there are similarities between *Allan S.* and the present case, there are also pronounced differences. Unlike the circumstances in *Allan S.,* the present applicant's criminal conduct, by his own admission, persisted over an extended period of time. The thefts committed by the applicant were not, as in *Allan S.,* isolated criminal transgressions; rather, they constituted a continuous course of criminal activity which the applicant did not see fit to terminate until after his graduation from college.

While the applicant denied complicity in the April 1971 incident involving the taking of the TV set — and the case against him was ultimately nol-prossed — he apparently learned little from the trauma of that episode since shortly thereafter he committed a larceny for which he was apprehended, one of an unspecified number which he candidly admitted. Although placed on probation for this offense under the active supervision of a probation officer, the applicant in short order violated his probation by committing another offense, *i.e.,* the attempted theft of the tape decks. The two crimes for which the applicant was prosecuted postdated his decision to apply for admission to law school, and it appears clear that his criminal conduct was far more aggravated than that involved in *Allan S.* In addition, the applicant's determination to conclude his criminal activity apparently did not flow from an "inborn" resolve to change his moral character; rather, the change was wrought as a result of the consequences to the applicant which emanated from his prosecution for those theft offenses for which he was apprehended by the police. Had he not been caught, the applicant, according to his own account, may well have continued to steal.

There can be no doubt, as Judge Digges indicated in dissent in *Allan S.,* that thievery of a repetitive nature, as here, is usually indicative of a serious character flaw. Hence, in such cases, the evidence of rehabilitation must be entirely

convincing if the applicant is to carry his heavy burden of proving present good moral character. While the decision of the Board to recommend the applicant's admission is entitled to great weight, considering the criminal offenses committed by the applicant, in light of the rehabilitative evidence presented, we are not satisfied that the applicant has sufficiently demonstrated his present moral character fitness to justify his admission to the Bar of Maryland. The evidence of the applicant's rehabilitation is based on his own testimony and on letters written by friends and law school faculty members, none of which provides more than a summary endorsement of his present moral character. Nor did any of these individuals testify on behalf of the applicant at the hearing before the Character Committee or the Board.

We thus conclude, on the record in this case — which includes the hearings before the Character Committee and the Board, as well as the hearing before us, at which the applicant personally appeared and was questioned — that at this time the applicant has not "so convincingly rehabilitated himself that it is proper that he become a member of a profession which must stand free from all suspicion." *Allan S.,* 282 Md. at 690. In so concluding, we note that the rehabilitative period in this case has been approximately five years and that the applicant is now 28 years old. The applicant is free to reapply at a later time, and to then present evidence of his moral character fitness that will unequivocally demonstrate his full and complete rehabilitation.

*It is so ordered.*

*Digges, J., concurring:*

As David H.'s showing of rehabilitation here is no more persuasive than that I thought legally insufficient in the case of *In re Application of Allan S.,* 282 Md. 683, 695, 387 A. 2d 271, 278 (1978), decided by this Court just a few months ago, I find myself in agreement with the majority that this applicant, as a matter of law, has not met the heavy burden which rests upon him to demonstrate his rehabilitation so as to warrant receiving our permission to practice law in

Maryland. This, however, is the limit of my concurrence with the majority's rationale, for their attempt to distinguish this case factually from *Allan S.* is not only wholly inadequate but also serves to point up all the more clearly the unfortunate character of that decision.

If anything, a comparison of the factual circumstances underlying the majority decision in *Allan S.* with those involved here indicates that this applicant presented a better, albeit inadequate, case for admission to the Bar of this State. The applicant in *Allan S.* admitted engaging twice in petty thievery, once while a college student and again *after* graduation from law school. The Board of Law Examiners, convinced that his rationalization of the second theft — characterized by Allan S. as a symbolic act in his testimony before the Board — was a false front unworthy of belief, recommended that the applicant not be admitted. Nevertheless, this Court rejected that recommendation and authorized him to practice law in this State. By way of contrast, although the crimes committed by David H. were of a somewhat more serious nature, their commission occurred when he was younger and therefore probably more immature than Allan S. Further, this applicant's criminal spree came to an end *prior* to his entry into law school, an indication that, in contrast to Allan S., the study of law may have made some impression upon him about the illegality, if not immorality, of thievery. It should also be pointed out that the Board of Law Examiners found David H. to be candid and forthright in admitting the moral error of his transgressions, an accolade they specifically declined to bestow upon Allan S. Finally, the Board in this case found the applicant had been sufficiently rehabilitated after a period of time equal to that which came between Allan S.'s last criminal escapade and the Board's unfavorable recommendation there.[1]

Faced with this factual dilemma, it is not surprising that the majority here, in struggling to distinguish *Allan S.,* prefer

---

1. Additionally, I see no significance in the majority's suggestion that, because David H.'s criminal activities occurred after his arrest for a crime for which he was not found guilty, he is somehow more culpable than was Allan S. who likewise did not profit from the traumatic experience of undergoing a prior arrest.

to disregard almost completely the basis for the Court's decision in that case and instead seize upon and apply the reasoning of the dissent, which they ignored in deciding *Allan S.,* concerning repetition of the applicant's criminal acts. In this regard, the majority stands on a very weak reed. In my view, without more, the mere passage of time between the offenses committed by Allan S. did not vitiate the doubts which the nature of his criminal acts inherently raised about his fitness to practice law in this State. As I see it, little distinction exists between a recidivist thief who commits his crimes in rapid fire order and one who prefers to spread his illegal activities intermittently over a period of time; if anything, the former may be able to demonstrate rehabilitation more readily than the latter.

While I recognize that no two cases are factually identical, it seems evident from the majority's strained efforts to distinguish David H.'s activities from those of Allan S. that the Court, as a result of its erroneous decision in *Allan S.,* is now plunging headlong into a "Serbonian Bog" from which it is unlikely to emerge with any logical or reasoned line of analysis for dealing with candidates for admission to the bar who have engaged in criminal activities involving "dishonesty, fraud, or deceit." *Maryland St. Bar Ass'n v. Agnew,* 271 Md. 543, 550, 318 A. 2d 811, 815 (1974). Surely, as a result of the Court's articulated reasons for these two decisions, uncertainty will now exist, both for the Board of Law Examiners and for candidates for admission, as to the extent an applicant can engage in activities outside the purview of the law and still be certified by this Court as sufficiently trustworthy to provide legal representation to the citizens of this State. Until there is a greater showing of rehabilitation than is present in either *Allan S.* or in this case, I repeat that I, for one, am "not willing to take the responsibility for asserting to the public that a petty thief is as worthy of trust as anyone else, so that a client should freely entrust him with his monies and affairs." *In re Application of Allan S., supra,* 282 Md. at 694, 387 A. 2d at 277. As I would now give this Court's decision in *Allan S.* a

silent burial without eulogy, I can only concur in the result reached by the majority here.

Judge Smith has authorized me to say that the views here expressed are likewise his views.