# IN RE APPLICATION OF DAVID H. FOR ADMISSION TO THE BAR OF MARYLAND

[Misc. No. 25, September Term, 1982.]

*Decided October 27, 1982.*

The matter was argued before MURPHY, C. J., and SMITH, ELDRIDGE, COLE, DAVIDSON, RODOWSKY and COUCH, JJ.

*David S. Harvis* for applicant.

Order of Court. SMITH and RODOWSKY, JJ., dissent. SMITH, J., filed a dissenting opinion at page 547 *infra* and RODOWSKY, J., filed a dissenting opinion at page 549 *infra.*

## *O R D E R*

Upon consideration of the favorable recommendation of the State Board of Law Examiners for admission to the Bar of Maryland of DAVID H., it is this 27th day of October, 1982

ORDERED, by the Court of Appeals of Maryland, a majority of the Court concurring, that the recommendation of the State Board for admission of DAVID H. be, and it is hereby, adopted, subject to the condition that DAVID H. be successful on a bar examination and that at such time the required updating oath as to character be filed.

Judges Smith and Rodowsky dissent.

*Smith, J., dissenting:*

I am no more willing to admit this young man to the bar today than I was when we last denied him admission. See *In Re Application of David H.,* 283 Md. 632, 392 A.2d 83 (1978).

In the earlier case Chief Judge Murphy said for the Court:

"[T]he . . . applicant's criminal conduct, by his own admission, persisted over an extended period of time. The thefts committed by the applicant were not . . . isolated criminal transactions; rather, they constituted a continuous course of criminal activity which the applicant did not see fit to terminate until after his graduation from college." 283 Md. at 640.

Judge Murphy pointed out for the Court:

"[T]he applicant's determination to conclude his criminal activity apparently did not flow from an 'inborn' resolve to change his moral character; rather, the change was wrought as a result of the consequences to the applicant which emanated from his prosecution for those theft offenses for which he was apprehended by the police. Had he not been caught, the applicant, according to his own account, may well have continued to steal." *Id.*

This led to his observation for the Court "that thievery of a repetitive nature, as here, is usually indicative of a serious character flaw." *Id.*

Even the ancient world was aware of the fact that one should not steal and had laws forbidding such conduct. See 7 Encyclopedia Britannica, *Decalogue* 153 (1971). Judge Markell said for the Court in *In Re Meyerson,* 190 Md. 671, 678, 59 A.2d 489 (1948), "As disbarment is not punishment, likewise we think due regard for the administration of justice does not permit disbarment and reinstatement to be made mere adjuncts to reform schools and the parole sys-

tem." Chief Judge Hammond quoted that language for the Court in *Maryland St. Bar Ass'n v. Boone,* 255 Md. 420, 433, 258 A.2d 438 (1969), and it has been quoted many times since then. It is no less applicable to an original admission.

Much of what I have just said in my dissent in the case of *In re Application of Maria C.,* 294 Md. 538, 451 A.2d 655 (1982), is applicable here. Once we admit an individual to the bar he is placed in a position where he may handle the funds of others running into tens of thousands and even hundreds of thousands of dollars. This can and does present a temptation to some individuals, as experience has amply demonstrated. Until such time as we begin actually spot checking, without notice, attorneys' escrow account to ascertain that they are as they should be, detection of peculations on the part of a lawyer are less likely to be promptly detected than, for instance, this applicant's larcenies. I have not yet discovered a way of looking into an individual's mind so that I can *know* that the qualities of dishonesty and callous disregard for the property of others demonstrated by this applicant will not again become a problem.

> In *Maria C.* I said:
>
> "A person's character is far more accurately indicated by his prior actions than by all of the recommendations that could possibly be made by good friends. Once certain shortcomings have been indicated by one's actions, a person simply should not be placed in a position where he may succumb to temptations similar to those which have led him astray on earlier occasions. I suggest that an employer would not place a convicted, but reformed, embezzler in a position to handle substantial amounts of money; a convicted, but reformed, pimp in charge of a women's dormitory, or one convicted of unlawfully distributing controlled dangerous substances, who has likewise reformed, in a position to supervise drug distribution for a legitimate drug supply house. In fact, in any of those situations, I dare say that if a case were to reach us

involving a fall from grace of such individuals, my colleagues would be inclined to comment that the employer's action was analogous to contributory negligence." 294 Md. at 541.

In the words of Judge Digges in the concurring opinion when this applicant was here before, in which I joined, quoting from his dissent, which I also joined, in *In Re Application of Allan S.,* 282 Md. 683, 694, 387 A.2d 271 (1978), "I, for one, am 'not willing to take the responsibility for asserting to the public that a petty thief is as worthy of trust as anyone else, so that a client should freely entrust him with his monies and affairs.'" 283 Md. at 643.

*Rodowsky, J., dissenting:*

Against the background of repetitive thefts of varying types over a long period of time, as reviewed in *In Re Application of David H.,* 283 Md. 632, 392 A.2d 83 (1978), I am not satisfied that the applicant has met the burden of demonstrating that he is presently a person of good moral character.