962 A.2d 988

**In the Matter of the Application of Gregory John STRZEMPEK for Admission to the Bar of Maryland.**

**Misc. Docket No. 2 Sept. Term 2008.**

Court of Appeals of Maryland.

Dec. 30, 2008.

Melvin G. Bergman, Esquire of Greenbelt, for applicant.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS and BARBERA, JJ.

**104**

BATTAGLIA, J.

In this case we are asked to decide whether to grant the petition for admission to the Maryland Bar of Gregory John Strzempek, who filed his application on December 19, 2005, and who, thereafter, failed to timely supplement it with the Board of Law Examiners, with the information that he had been arrested on February 10, 2006, and convicted in the State of Virginia for driving while intoxicated, reckless driving, eluding a police officer, and unsafe lane changing, after pleading guilty on April 12, 2006. Strzempek eventually disclosed his convictions and sentence to the Board, albeit nine months later, only after being advised that he had passed the Bar Exam.

The Board filed an exception to his admission and referred the matter to the Character Committee, which held a hearing and recommended that Strzempek be denied admission, because his failure to immediately disclose impugned his present character and fitness. Strzempek appealed to the Board of Law Examiners, and the Board recommended that he be admitted, because the voluntarily disclosure, although late, was deemed a mitigating factor. This Court ordered Strzempek to "show cause why the favorable recommendation of the State Board of Law Examiners should be accepted and why the adverse recommendation of the Character Committee for the Fourth Appellate Circuit should be rejected by the Court." Upon hearing argument from Strzempek's counsel and an independent review of the record, we shall conclude that Strzempek presently does not possess the requisite moral character and fitness for the practice of law, required for admission to the Maryland Bar.[1]

---

1. Rule 5(a) of the Rules Governing Admission to the Bar of Maryland states in pertinent part: "**(a) Burden of proof.** The applicant bears the burden of proving ... the applicant's good moral character and fitness for the practice of law."

 Hereinafter all references to a rule or the rules are to the Maryland Rules Governing Admission to the Bar.

## I. Background

The facts are undisputed. Gregory John Strzempek was licensed to practice law in the State of New York for twenty-four years, when he filed a Bar Application with the Maryland Board of Law Examiners, on December 19, 2005.[2] At the time of the application, Strzempek answered "none" to Question 11(a),[3] asking for "a complete record of all criminal proceedings (including traffic citations, arrests, and summonses)," and also answered "No" to Question 17, which asked:[4]

Have there been any circumstances or unfavorable incidents in your life, whether at school, college, law school, business, or otherwise, which may have a bearing upon your character or fitness to practice law, not called for by the questions contained in this questionnaire or disclosed in your answers? If so, give full details, including any assertions or implications of dishonesty, misconduct, misrepresentation, financial irresponsibility, and disciplinary measures imposed (if any) by attaching a supplemental statement. . . .

Strzempek also affixed his signature on the application immediately beneath Question 19,[5] which informed applicants of their continuing responsibility to disclose relevant information:

*Affirmation of Applicant's Duty of Full, Candid Disclosure and Applicant's Continuing Duty to Submit Written Notice of Changes to Information Sought by the Application: I understand that the required disclosures in this questionnaire are of a continuing nature. I hereby acknowledge my duty to respond fully and candidly to each question or required disclosure and to ensure that my responses are accurate and current at all times until I*

---

2. Rule 2(a) provides in pertinent part: "**(a) By application.** A person who meets the requirements of Rules 3 and 4 may apply for admission to the Bar of this State by filing an application for admission, accompanied by the prescribed fee, with the Board."

3. Question 11(a) is now Question 12(a) on the current Bar Application.

4. Question 17 is now Question 18 on the current Bar Application.

5. Question 19 is now Question 20 on the current Bar Application.

*am formally admitted to the Bar of the State of Maryland. I will advise the Board immediately and in writing of any changes in the information disclosed in or sought by this questionnaire, including any pertinent facts developed after the initial filing of this application and the facts of any incident occurring subsequent to the initial filing of this application.*

*I do solemnly declare and affirm under the penalties of perjury, that the matters and facts set forth in the foregoing application are true and correct.*

*I have made and retained a copy of this entire application for my records and for use in the event that the original is lost in the mail or during the character investigation.*

(Italics, underlining and emboldening in original).

On February 10, 2006, approximately two weeks before Strzempek was scheduled to take the February Bar Exam, he was arrested in Fairfax County, Virginia, and charged with driving while intoxicated, refusal of a breath test, reckless driving, eluding a police officer, and unsafe lane changing; he was taken to the Fairfax County Adult Detention Center and released on bail. On April 12, 2006, Strzempek pled guilty to driving while intoxicated, reckless driving, eluding a police officer, and unsafe lane changing, and after paying $641 in fines, was sentenced to 360 days in jail, with 356 days suspended on the DWI charge, as well as suspended driving privileges and probation for one year.[6] He served the four-day jail sentence from April 14 to April 18, 2006. On April 27, 2006, only nine days after having been released from jail, Strzempek attended his Character Committee interview, during which he did not disclose his arrest, convictions, jail sentence, suspended driver's license or probation, disclosure that likely would have triggered additional investigation at that time.[7] Strzempek also did not supplement his application.

---

**6.** Strzempek was permitted to drive only to and from work and to and from the Fairfax County Alcohol Safety Program.

**7.** Rule 5(b)(1)(B) states that the purpose of the Character Committee interview is to "verify the facts stated in the questionnaire, contact the

He took the July 2006 Maryland Bar Examination and was advised that he passed on Friday, November 5. Three days later, on November 8, a Monday, Strzempek sent the Board his Affirmation Form [8]—a form sent with the Bar Examination results requiring a successful applicant to affirm that the information contained in the original application was still current. With the Form, Strzempek enclosed his conviction record and a letter that reflected that he had been convicted of the five offenses and paid fines of $87 and $50 for the lesser traffic violations, but even then omitted the $641 fine, the four days in prison and the suspended sentence, imposed for driving while intoxicated. Upon receipt, the Board filed an exception to Strzempek's admission, and the file was returned to the Character Committee to enable Strzempek to explain his lack of candor regarding the Virginia charges.

The Character Committee conducted a hearing on December 5, 2007,[9] during which Strzempek acknowledged that he

---

applicant's references, and make any further investigation necessary or desirable."

**8.** The "Affirmation By General Bar Applicant" requires that each applicant under oath affirm the following:

> 1. All of the matters and facts contained in my Bar application heretofore filed are still true and correct, and no changes have taken place with respect to my personal situation which would reflect unfavorably on my qualification to be admitted to the Maryland bar except as stated below.
> 2. I have not been arrested since the date of my said application except as stated below.
> 3. I have paid all undisputed taxes and unemployment insurance contributions which I am obligated to pay to the Comptroller of Maryland or the Department of Labor, Licensing and Regulation or have provided for payment in a manner satisfactory to the unit responsible for collection, except as stated below.
> 4. Following is an explanation of all exceptions to items 1, 2, and 3 above: (Continue on back or attach separate sheet, if necessary).

Strzempek signed the Affirmation Form, but modified questions 1 and 2 by striking out the word *below* in each and replacing it with the words "in the supplement submitted herewith."

**9.** Rule 5(b)(2) provides in pertinent part:

had not disclosed the incident, particularly during his character interview, and provided the following explanation:

[O]ne of the things I was thinking or my main thought during the process was at the time I had my meeting I had not even taken the bar exam. And since it had been quite a number of years since I took an exam, I was uncertain as to whether I would be successful on the exam.

And I felt at the time that I would wait until I obtained the results and then at that point I would—I would either pass the exam, at which point I would promptly inform the Law Examiners and the Character Committee of the incident, or I would not pass the exam and decide to retake it, at which point I would also disclose the incident, or I would decide that, you know, either due to time constraints, you know, or that I wouldn't—or I didn't think I would pass, ultimately pass the exam, I'd decide to withdraw my application. So in my own mind, as long as I thought that there was a probability that I could withdraw the application, I didn't see any need to expose myself to that type of embarrassment in disclosing that and also have that kind of material lying around in some file which, you know, I really didn't know where it would ultimately end up. And that was my reason.

After conducting a full hearing, the Character Committee recommended that Strzempek not be admitted to the Maryland Bar:

The Applicant's explanation for his failure to make immediate disclosure to the State Board of his arrest, conviction

---

If the Committee concludes that there may be ground for recommending denial of the application, it shall notify the applicant and schedule a hearing. The hearing shall be conducted on the record and the applicant shall have the right to testify, to present witnesses, and to be represented by counsel. A transcript of the hearing shall be transmitted by the Committee to the Board along with the Committee's report. The Committee's Report shall set forth the findings of fact on which the recommendation is based and a statement supporting the conclusion. The Committee shall mail a copy of its report to the applicant, and a copy of the hearing transcript shall be furnished to the applicant upon payment of reasonable charges.

and jail term and his lack of candor at the interview with [the Character Committee Representative] was that he did not want his information sitting in a file as long as there was a probability of his not passing the Bar or withdrawing his application. While acknowledging that he violated the requirement for immediate and full disclosure of any changes to his application, the applicant stated that he did not make the disclosure because of his concerns about the privacy of information concerning his arrest and conviction. He maintained this position even after being reminded that the application file is private and confidential and that his court case was part of the public record. Further, the applicant stated that he would not have made the disclosure if he had failed the bar exam because he believed this issue would not have been relevant. Even though he stated that his ultimate disclosure was voluntary, such disclosure was in fact mandatory. His disclosure came after he received notification that he had passed the Bar examination and was required to complete an affirmation of the information contained in his application prior to admission. The applicant, while admitting that he made a mistake, did not show remorse for his actions and stated that he saw no reason for disclosure if he had failed the exam even though he previously admitted that he violated the sworn statement on his application requiring full and immediate disclosure of any charges to the information in his application. Finally, as a member of the New York Bar for 24 years, the Applicant should understand the importance of candor and his responsibility for compliance with his sworn statement.

(Alteration added).

Pursuant to Rule 5(c),[10] the Board reviewed the Character Committee's Report and notified Strzempek that a hearing

---

**10.** Maryland Bar Admission Rule 5(c) states:

(c) *Hearing by board.* If the Board concludes after review of the Committee's report and the transcript that there may be grounds for recommending denial of the application, it shall promptly afford the applicant the opportunity for a hearing on the record made before the Committee. The Board shall mail a copy of its report and recom-

would be held to afford him the opportunity to support his admission. The hearing, based upon the record before the Character Committee, was held on May 2, 2008; the Board adduced the following findings of fact and recommended that Strzempek be admitted:

1. The Applicant was charged with five offenses relating to drinking and driving in Fairfax, Virginia on February 10, 2006. He was convicted of DWI, paid $641.00 in fines and costs, one year probation including Virginia's alcohol program (VASAP), and had a restricted license and probation for one year to and from work and VASAP.

2. The Board finds that the Applicant revealed this information in his affirmation and has convinced the Board that he had intended to voluntarily come forward with the information. The Applicant convinced the Board that he has no intention for being admitted under what he characterized as "false pretenses."

3. Regarding his failure to timely amend his Application to include the offenses noted above, Applicant stated that it was never his intention to conceal the arrest, conviction and sentence which resulted from his conduct on February 10, 2006. He rationalized that if he failed to pass the July 2006 exam there would be no need to disclose the arrest and conviction unless he applied to retake the exam. In the event that he passed the exam, he intended to promptly make disclosure to the Board. In fact, he did so voluntarily on November 8, 200[6].

4. The Board finds that the Applicant disclosed the arrest and conviction when applying for employment and was not

mendation to the applicant and the Committee. If the Board decides to recommend denial of the application in its report to the Court, the Board shall first give the applicant an opportunity to withdraw the application. If the applicant withdraws the application, the Board shall retain the records. Otherwise, it shall transmit to the Court a report of its proceedings and a recommendation as to the approval or denial of the application together with all papers relating to the matter.

hired for at least [ ]one position because of the arrest and conviction.

5. The Board finds that the arrest, conviction and late disclosure were aberrations and there is no reason to believe the conduct will be repeated.

6. The Board finds that the Applicant was candid and contrite in his testimony and submissions to the Board. The Board panel is unanimously satisfied that the Applicant has met his burden of proving that he currently possesses good moral character and fitness for membership in the Bar of Maryland and recommends his admission.

Pursuant to Rules 5(c) and 5(d),[11] a show cause hearing was held before this Court, requiring Strzempek to "show cause why the favorable recommendation of the State Board of Law Examiners should be accepted and why the adverse recommendation of the Character Committee for the Fourth Appellate Circuit should be rejected by the Court." Counsel for Strzempek appeared before this Court in support of his admission.

## II. Standard of Review

 The issue before us is whether Strzempek has met his burden of proving that he possesses the *present* good moral character to practice law in the state of Maryland. *In re Application of Stern*, 403 Md. 615, 629, 943 A.2d 1247, 1255 (2008); *In re Application of Brown*, 392 Md. 44, 54, 895 A.2d

---

11. Rule 5(d) provides:

**(d) Review by Court.**

(1) If the applicant elects not to withdraw the application, after the Board submits its report and adverse recommendation the Court shall require the applicant to show cause why the application should not be denied.

(2) If the Board recommends approval of the application contrary to an adverse recommendation by the Committee, within 30 days after the filing of the Board's report the Committee may file with the Court exceptions to the Board's recommendation. The Committee shall mail copies of its exceptions to the applicant and the Board.

(3) Proceedings in the Court under this section shall be on the records made before the Character Committee and the Board. If the Court denies the application, the Board shall retain the records.

1050, 1055 (2006); *In re Application of Hyland,* 339 Md. 521, 535, 663 A.2d 1309, 1316 (1995); Rule 5(a). Good moral character is denoted by "those qualities of truth-speaking, of a high sense of honor, of granite discretion, of the strictest observance of fiduciary responsibility." *Application of Stern,* 403 Md. at 629, 943 A.2d at 1255; *Application of Brown,* 392 Md. at 54, 895 A.2d at 1055–56; *Application of Hyland,* 339 Md. at 534, 663 A.2d at 1315. Furthermore, "it is a given that good moral character includes truthfulness and candor, and *absolute candor is a requisite of admission to the Maryland Bar." Application of Stern,* 403 Md. at 634, 943 A.2d at 1258; *Application of Brown,* 392 Md. at 58, 895 A.2d at 1058 (emphasis added).

The Board's conclusions regarding an applicant's moral character and its recommendations concerning admission to the Bar are entitled to great weight. *See Application of Stern,* 403 Md. at 629, 943 A.2d at 1255; *Application of Hyland,* 339 Md. at 536, 663 A.2d at 1316; *In re Application of Charles M.,* 313 Md. 168, 178–80, 545 A.2d 7, 12 (1988); *In re Application of K.B.,* 291 Md. 170, 177, 434 A.2d 541, 544 (1981). To properly exercise our responsibility, however, we make our own independent evaluation of the applicant's present moral character based upon testimony and evidence submitted before the Character Committee and the Board. *Application of Stern,* 403 Md. at 630, 943 A.2d at 1255; *Application of Brown,* 392 Md. at 55, 895 A.2d at 1056; *Application of Hyland,* 339 Md. at 536, 663 A.2d at 1316; *Application of Charles M.,* 313 Md. at 178–80, 545 A.2d at 12; *Application of K.B.,* 291 Md. at 177, 434 A.2d at 544; *In re Application of Allan S.,* 282 Md. 683, 690–91, 387 A.2d 271, 276 (1978).

### III. Discussion

Throughout these proceedings, Strzempek has admitted that his failure to immediately and fully disclose his arrest, convictions, jail sentence, suspended driver's license and probation after his original application was not in compliance with Question 19, which required applicants "to ensure that [their]

responses are accurate and current at all times until [they are] formally admitted," because he failed to immediately supplement Question 11(a), which asked for "a complete record of all criminal proceedings (including traffic citations, arrests, and summonses)," and Question 17, which asked about any unfavorable incidents that might bear on the applicant's character or fitness to practice law. Strzempek asserts, however, that despite his choice not to adhere to the continuing disclosure requirement of Question 19, he, nevertheless, should be admitted to the Bar, because of the mitigatory nature both of his eventual voluntary disclosure and of his purported lack of intent to permanently conceal. In making this argument, he distinguishes his action from the conduct of prior applicants, who have been denied admission.

█ The Character Committee disagreed with Strzempek about the voluntary nature of the disclosure and the effect of his purported intent to eventually disclose and recommended that he be denied admission. The Board, on the other hand, agreed with Strzempek regarding the mitigatory effect of the voluntary disclosure and of his purported intent not to conceal and recommended admission. Upon an independent review of the record, we disagree with the Board and agree with the Character Committee, because Strzempek has failed to meet the burden of proving that he possesses the present moral character and fitness to warrant admission to the Maryland Bar. In so doing, we emphasize that disclosure on the Bar application and immediate and full supplementation after an incident warranting exposition is mandatory, not voluntary. It is not the choice of a candidate for admission whether to disclose and under what conditions.

Question 19 on the Bar Application clearly emphasizes the requisites of immediate as well as full disclosure. The Rule governing the purpose of the Character Committee interview, which charges its attorney members with "verify[ing] the facts stated in the questionnaire ... and mak[ing] any further investigation ... necessary or desirable," also is dependent upon immediate and full disclosure by the applicant, for

otherwise, the process of investigation is stymied. The Affirmation Form, furthermore, which requires an applicant to affirm that the original application remains current, repeats this mantra of mandatory disclosure. In our recent cases involving bar admission, especially, *Application of Stern,* 403 Md. at 634, 943 A.2d at 1258, and *Application of Brown,* 392 Md. at 58, 895 A.2d at 1058, we also have emphasized that, "it is a given that good moral character includes truthfulness and candor, and *absolute candor is a requisite of admission to the Maryland Bar.*" (Emphasis added).

Strzempek was required to disclose his arrest in February of 2006, and his conviction and sentencing in April of 2006, but he failed to do so "promptly upon the occurrence of each event." He also was obliged to disclose the same information in his Character Committee interview, which occurred only nine days after his release from jail in April of 2006, but he failed to do so. Strzempek also failed to disclose any of the adverse information for the entirety of the period from February until November of 2006, when he had been advised that he had passed the Bar.

■ Strzempek attempts to mitigate the adverse effect of his lack of candor by asserting that he did not intend to permanently conceal his arrest and convictions; although he admits that he was aware of his obligation to candidly, accurately and *currently* disclose. He relies on his *choice not* to disclose as a mitigator. His choice not to disclose in the face of these known obligations, however, impinges upon his character and fitness to practice law, irrespective of any purported ultimate intent.

Strzempek's failure to disclose, furthermore, is aggravated by the fact that only nine days after being released from prison, he failed to advise the Character Committee representative, orally or in writing, about his arrest, convictions, jail sentence and suspended driver's licence or probation. While Strzempek admitted that he was aware of his obligation to disclose at that time, he again chose not to disclose but to conceal. His lack of candor clearly frustrated the intent, as

well as the purpose of the Character interview, upon which we rely for assessment of good character.

Strzempek also attempts to minimize his behavior by distinguishing his conduct from that of the applicants in *Application of Stern*, 403 Md. at 615, 943 A.2d at 1247 and *Application of Brown*, 392 Md. at 44, 895 A.2d at 1050. In *Application of Stern*, 403 Md. at 636, 943 A.2d at 1259, we denied admission to an applicant who had engaged in an inappropriate relationship with a 15 year-old girl and who had a litany of unpaid debts, many of which he failed to disclose both on his law school and bar applications. In *Application of Brown*, 392 Md. at 60, 895 A.2d at 1059, we denied admission to an applicant when he had failed to disclose a bank fraud conviction on his law school application, modified a resume produced to the Board to conceal time spent in prison, and failed to pay restitution.

Nevertheless, because we make an independent review of the record, we always will be confronted with behavior that is more or less egregious than in other cases related to the admission of candidates to the Bar. Whether Strzempek thinks his conduct was egregious is of no moment, because the gravamen of each of our recent cases, is that "*absolute candor* is a requisite of admission to the Maryland Bar." *Application of Stern*, 403 Md. at 634, 943 A.2d at 1258, *Application of Brown*, 392 Md. at 58, 895 A.2d at 1058 (emphasis added).

Strzempek failed to disclose immediately and fully, the existence, initially in February, of his arrest and then, ultimately, of his convictions in April of 2006, after pleading guilty to various serious traffic offenses. While Strzempek sees that as a choice, we see it as a reflection of his lack of candor, especially considering his experience in the legal profession, having been admitted to the Bar in New York for over twenty years. If after that long of a period of time, Strzempek still failed to recognize the difference between his choice to disclose and our mandated reporting, we see his quandary not as mitigatory but as aggravating. For these reasons, and because of the fact that Strzempek bears the burden to prove his

present good moral character, our own independent review of the record leads us to deny Strzempek's application for admission to the Bar of Maryland.

**IT IS SO ORDERED.**

BELL, C.J., and MURPHY, J., dissent.

Dissenting Opinion by BELL, C.J., in which MURPHY, J. joins.

Contrary to the conclusion of the majority, I would affirm the conclusion of the State Board of Law Examiners that Gregory John Strzempek, the petitioner, possesses the requisite moral character and fitness for the practice of law, required for admission to the Maryland bar, and, in deference to its recommendation that we do so, admit him to practice in Maryland.

To be sure, character matters proceed in this Court on the "records made before Character Committee and the [State] Board [of Law Examiners,]" Rule 5(d)(3) of the Rules Governing Admission to the Bar of Maryland, and this Court "make[s] its own independent evaluation of the applicant's present moral character based upon testimony and evidence submitted before the Character Committee and the State Board [of Law Examiners]." *In re Stern,* 403 Md. 615, 630, 943 A.2d 1247, 1255 (2008); *In re Application of Brown,* 392 Md. 44, 55, 895 A.2d 1050, 1056 (2006). Nevertheless, it is also true that the conclusion of the Board that an applicant does or, does not, possess the requisite moral character fitness, is entitled to great weight by this Court. *See In re Application of Stern,* 403 Md. 615, 943 A.2d 1247 (2008); *In re Application of Hyland,* 339 Md. 521, 663 A.2d 1309 (1995); *In re Application of Charles M.,* 313 Md. 168, 545 A.2d 7 (1988); *In re Application of Maria C.,* 294 Md. 538, 451 A.2d 655 (1982); *In re Application of K.B.,* 291 Md. 170, 434 A.2d 541 (1981); *In re Application of A.T.,* 286 Md. 507, 408 A.2d 1023 (1979); *In re Application of David H.,* 283 Md. 632, 392 A.2d 83 (1978); *In re Application of Allan S.,* 282 Md. 683, 387 A.2d 271 (1978); *Character Committee v. Mandras,* 233 Md. 285, 196

A.2d 630 (1964). Indeed, as I pointed out in *In re Application of Brown,* 392 Md. 44, 65–66, 895 A.2d 1050, 1062–63 (2006), in dissent:

> "that this Court accepts the recommendation of the Board is the rule and the failure to do so, the exception. *See In the Matter of the Application of William H. Hyland,* 339 Md. 521, 536, 663 A.2d 1309, 1316 (1995); *In the Matter of the Application of Charles M.,* 313 Md. 168, 178, 545 A.2d 7, 12 (1988); *In re Application of Maria C.,* 294 Md. 538, 451 A.2d 655 (1982); *In re Application of G.L.S.,* 292 Md. 378, 439 A.2d 1107 (1982); *In the Matter of the Application of A.T.,* 286 Md. 507, 515, 408 A.2d 1023, 1028 (1979). *See also In re Sanderson,* 387 Md. 352, 875 A.2d 702 (2005); *In re Costanzo,* 385 Md. 122, 867 A.2d 1039 (2005); *In re Lawson,* 380 Md. 194, 844 A.2d 405 (2004); *In re Application of Rosendale,* 372 Md. 691, 816 A.2d 68 (2003); *In re Application of Alonso,* 372 Md. 136, 812 A.2d 291 (2002); *In re Gardner,* 368 Md. 505, 796 A.2d 90 (2002); *In re Levenson,* 356 Md. 1, 736 A.2d 1056 (1999); *In re Alexander,* 355 Md. 284, 734 A.2d 241 (1999)."

It is true, of course, that this Court has refused to accept the Board's recommendation, but, as I noted in *Brown,* 392 Md. at 66, 895 A.2d at 1063, in the last thirty years, only nine times out of an approximate sixty-five cases. *See In re Application of Boccone,* 373 Md. 358, 818 A.2d 1077 (2003)(order only); *In re Hersh,* 354 Md. 329, 731 A.2d 438 (1999)(order only); *Application of Vann,* 349 Md. 101, 707 A.2d 87 (1998)(order only); *Application of Dortch,* 344 Md. 376, 687 A.2d 245 (1997)(order only); *Application of J.L.L.,* 304 Md. 394, 499 A.2d 935 (1985)(order only); *Application of George B.,* 297 Md. 421, 466 A.2d 1286 (1983); *Application of K.B.,* 291 Md. 170, 434 A.2d 541 (1981); *Application of David H.,* 283 Md. 632, 392 A.2d 83 (1978); *Application of Allan S.,* 282 Md. 683, 387 A.2d 271 (1978). More significantly, I pointed out, *id.,*

> "In those instances in which we declined to follow the Board's recommendation with respect to the grant or denial of an applicant's application for admission, factual determi-

nations were not dispositive or even in conflict. In fact, the facts in those cases were clear and undisputed and there were no credibility issues to be resolved."

As in *Brown*, there are factual determinations that were required to be made and that were made in this case. To be sure, those determinations largely related to motive and intent, but they were, here as in *Brown*, factual determinations nevertheless. And they depend on an assessment of the petitioner's credibility. In this case, the Board held a hearing at which the petitioner appeared and testified. Having seen and heard him, the Board, unanimously, concluded that Mr. Strzempek had "no intention of being admitted under what he characterized as 'false pretenses.'" Necessarily, the Board had to have found the petitioner credible. The majority did not defer to that finding when it said, regarding Mr. Strzempek's failure to disclose his arrest, convictions, and sentence to the Character Committee, despite being aware of his duty to disclose, "[h]is choice not to disclose in the face of these known obligations, however, impinges upon his character and fitness to practice law, irrespective of any purported ultimate intent." *Strzempek*, [at 114, 962 A.2d at 995]. On the contrary, it in effect, made its own credibility finding; certainly, rather than defer to the Board, it all but disregarded the Board's finding.

The Board also concluded that Mr. Strzempek's "arrest, conviction and late disclosure were aberrations and there is no reason to believe the conduct will be repeated" and that it was "unanimously satisfied that the Applicant has met his burden of proving that he currently possesses good moral character and fitness for membership in the Bar of Maryland and recommends his admission." These conclusions, too, necessarily were undergirded by the Board's credibility determination, its having believed the petitioner. Again, the majority refuses to afford that determination any deference. Instead, inappropriately and erroneously, it makes its own credibility determination.[1]

---

1. It must be acknowledged that the Character Committee reached the same conclusion as the majority with regard to the petitioner's credibil-

The record of the proceedings before the Board is clear and unanimous. The Board had an opportunity to see and hear the petitioner when he testified and, accordingly, assess his credibility. I continue in the views expressed in *Brown:*

> "That the proceedings in this Court are to be on the records made before the Committee and the Board does not mean, and cannot mean, that the Court may pick and choose the fact-findings to credit. It may, of course, determine whether any factual finding is clearly erroneous, but that does not equate to its being permitted to choose between conflicting findings.... Otherwise, the Board's recommendations would be reduced to simple suggestions and its role would be essentially meaningless. Certainly this is not the intent of Rule 5(d)(3) or of our jurisprudence on the subject."

*In re Brown,* 392 Md. at 73, 895 A.2d at 1067.

I would admit Mr. Strzempek to the practice of law in Maryland.

Judge MURPHY joins in the views expressed herein.

■■■■■■■■

---

ity. That does not explain or make the majority's disregard of the Board's finding any more acceptable. It is the Board's decision that is reviewed, even though the record is that before both the Character Committee and the Board. The question is whether the Board got it right, not whether the Character Committee did. *See e.g.,* Maryland Code (2004 Replacement Volume), § 10–209(e)(2) of the Business Occupations and Professions Article ("The Board shall report to the Court of Appeals ... recommendations about the character and reputation of each applicant who passes the examination.").