*In the Matter of the Application of Otion Gjini to the Bar of Maryland*, Misc. No. 32, Sept. Term, 2015. Opinion by Battaglia, J.

## **Bar Admission – Duty of Immediate and Full Disclosure**

Applicant's failure to disclose a Petition to Violate Probation on his Bar Application in the face of his known obligations to candidly, accurately and currently disclose impinged upon his character and fitness to practice law warranting denial of his application for admission to the Bar of Maryland.

Date argued: May 10, 2016

Misc. Docket No. 32

September Term, 2015

IN THE MATTER OF THE APPLICATION
OF OTION GJINI TO THE BAR OF
MARYLAND

Barbera, C.J.
Greene
Adkins
McDonald
Watts
Hotten
Battaglia, Lynne A. (Retired,
Specially Assigned)
JJ.

Opinion by Battaglia, J.
Barbera, C.J., Adkins and McDonald, JJ.
dissent.

Filed: July 7, 2016

Rule 5(d) of the Maryland Rules Governing Admission to the Bar of Maryland renders this Court the final arbiter of character and fitness of an applicant[1]:

[1] Rule 5 of the Maryland Rules Governing Admission to the Bar of Maryland provides:

(a) **Burden of Proof.** The applicant bears the burden of proving to the Character Committee, the Board, and the Court the applicant's good moral character and fitness for the practice of law. Failure or refusal to answer fully and candidly any question set forth in the application or any relevant question asked by a member of the Character Committee, the Board, or the Court is sufficient cause for a finding that the applicant has not met this burden.

(b) **Investigation and Report of Character Committee.** (1) On receipt of a character questionnaire forwarded by the Board pursuant to Rule 2(d), the Character Committee shall (A) through one of its members, personally interview the applicant, (B) verify the facts stated in the questionnaire, contact the applicant's references, and make any further investigation it finds necessary or desirable, (C) evaluate the applicant's character and fitness for the practice of law, and (D) transmit to the Board a report of its investigation and a recommendation as to the approval or denial of the application for admission.

(2) If the Committee concludes that there may be grounds for recommending denial of the application, it shall notify the applicant and schedule a hearing. The hearing shall be conducted on the record and the applicant shall have the right to testify, to present witnesses, and to be represented by counsel. A transcript of the hearing shall be transmitted by the Committee to the Board along with the Committee's report. The Committee's report shall set forth findings of fact on which the recommendation is based and a statement supporting the conclusion. The Committee shall mail a copy of its report to the applicant, and a copy of the hearing transcript shall be furnished to the applicant upon payment of reasonable charges.

(c) **Hearing by Board.** If the Board concludes after review of the Committee's report and the transcript that there may be grounds for recommending denial of the application, it shall promptly afford the applicant the opportunity for a hearing on the record made before the Committee. The Board shall mail a copy of its report and recommendation to the applicant and the Committee. If the Board decides to recommend denial of the application in its report to the Court, the Board shall first give the applicant an opportunity to withdraw the application. If the applicant withdraws the application, the Board shall retain the records. Otherwise, it

(continued . . . )

(d) **Review by Court.** (1) If the applicant elects not to withdraw the application, after the Board submits its report and adverse recommendation the Court shall require the applicant to show cause why the application should not be denied.

(2) If the Board recommends approval of the application contrary to an adverse recommendation by the Committee, within 30 days after the filing of the Board's report the Committee may file with the Court exceptions to the Board's recommendation. The Committee shall mail copies of its exceptions to the applicant and the Board.

(3) Proceedings in the Court under this section shall be on the records made before the Character Committee and the Board. If the Court denies the application, the Board shall retain the records.

Our responsibility to regulate the conduct of attorneys is highlighted in this matter as we will not grant the application for admission of Otion Gjini who received a probation before judgment in 2013 for driving while impaired and thereafter failed to disclose on his application that he had received a Petition to Violate Probation and an attendant Show Cause Order.

## I. Background

Otion Gjini filed an application with the State Board of Law Examiners ("Board") for admission to the Maryland Bar pursuant to Rule 2 of the Maryland Rules Governing Admission to the Bar.[2] In Gjini's Application, dated May 19, 2014, in response to

---

( . . . continued)
shall transmit to the Court a report of its proceedings and a recommendation as to the approval or denial of the application together with all papers relating to the matter.

* * *

(e) **Continuing Review.** All applicants remain subject to further Committee review and report until admitted to the Bar.

[2] Rule 2(a) provides: "(a) **By Application.** A person who meets the requirements of Rules 3 and 4 may apply for admission to the Bar of this State by filing an application for admission, accompanied by the prescribed fee, with the Board." Rule 5(a) provides that,

(continued . . . )

Question 12, which asks for "a complete record of all criminal proceedings" he reported, among a number of other offenses, that on August 7, 2013 he had been charged with "driving while impaired by alcohol" and had received a probation before judgment ("PBJ").[3] Gjini answered "No" to Question 18, which asked:

> Have there been any circumstances or unfavorable incidents in your life, whether at school, college, law school, business, or otherwise, which may have a bearing upon your character or your fitness to practice law, not called for by the questions contained in this questionnaire or disclosed in your answers?
> If so, give full details, including any assertions or implication of dishonesty, misconduct, misrepresentation, financial irresponsibility, and disciplinary measures imposed (if any) by attaching a supplemental statement. You are not required to disclose, in response to this question, any juvenile proceeding or any criminal proceeding expunged pursuant to Maryland law. Maryland law does not permit expungement of convictions.

Gjini also affixed his signature on the application immediately beneath Question 20 which informs applicants of their continuing responsibility to disclose changes to the information sought by the application:

> ***Affirmation of Applicant's Duty of Full, Candid Disclosure and Applicant's Continuing Duty to Submit Written Notice of Changes to Information Sought by the Application: I understand that the required disclosures in this questionnaire are of a continuing nature. I hereby acknowledge my duty to respond fully and candidly to each question or required disclosure and to ensure that my responses are accurate and current at all times until I am formally admitted to the Bar of the State of Maryland. I will advise the Board immediately and in writing of any***

---

( . . . continued)

"Failure or refusal to answer fully and candidly any question set forth in the application . . . is sufficient cause for a finding that the applicant has not met [his] burden" of proving "his good moral character and fitness for the practice of law."

[3] Gjini's probation was supervised and included a condition that he "Attend and successfully complete local Health Department alcohol treatment program and pay any required costs."

*changes in the information disclosed in or sought by this questionnaire, including any pertinent facts developed after the initial filing of this application and the facts of any incident occurring subsequent to the initial filing of this application.*

*I do solemnly declare and affirm under the penalties of perjury, that the matters and facts set forth in the foregoing application are true and correct.*

*I have made and retained a copy of this entire application for my records and for use in the event that the original is lost in the mail or during the character investigation.*

(Italics, underlining and emboldening in original).

In accordance with Rule 5(b)(1),[4] Gjini's Bar application was forwarded to a member of the Character Committee for the Seventh Appellate Circuit, David DeJong, Esquire, because Gjini reflected a Montgomery County address. Mr. DeJong interviewed Gjini on September 9, 2014 and October 23, 2014 and concluded that Gjini had failed to bear his burden of proving his character and moral fitness for the practice of law in Maryland because of Gjini's August 13, 2013 driving while impaired charge as well as his extensive driving record which included another alcohol related offense for which

---

[4] Rule 5(b)(1) provides:

(b) **Investigation and Report of Character Committee.** (1) On receipt of a character questionnaire forwarded by the Board pursuant to Rule 2(d), the Character Committee shall (A) through one of its members, personally interview the applicant, (B) verify the facts stated in the questionnaire, contact the applicant's references, and make any further investigation it finds necessary or desirable, (C) evaluate the applicant's character and fitness for the practice of law, and (D) transmit to the Board a report of its investigation and a recommendation as to the approval or denial of the application for admission.

Gjini was not prosecuted.[5] In addition, Mr. DeJong was concerned about on-line comments he found that Gjini had written on internet message boards while in law school. After Mr. DeJong forwarded his recommendation to the Character Committee for the Seventh Appellate Circuit and before it conducted a hearing under Rule 5(b)(2),[6] Gjini received a Petition to Violate Probation filed by his probation officer on December 30, 2014 alleging that Gjini had "failed to verify attending and successfully completing a local Health Department alcohol treatment program" with a corresponding Show Cause Order in which Gjini was required to appear on February 18, 2015 in the District Court for Montgomery County. Gjini's hearing was postponed due to weather, and Gjini appeared before a district court judge in Montgomery County on March 23, 2015, just a

---

[5] Gjini's driving record reflected that his license was suspended in 2012 for an alcohol related driving offense, but the offense was not prosecuted. The description on Gjini's driving record dated March 10, 2012 stated, "A/R – Suspended – 1st Offense Alcohol Content .08 or More." The docket entry for district court dated March 10, 2012, however, described the incident as "Driver Failure to Stop at Stop Sign Line" and indicated a disposition of *nolle prosequi*.

[6] Rule 5(b)(2) provides:

> (2) If the Committee concludes that there may be grounds for recommending denial of the application, it shall notify the applicant and schedule a hearing. The hearing shall be conducted on the record and the applicant shall have the right to testify, to present witnesses, and to be represented by counsel. A transcript of the hearing shall be transmitted by the Committee to the Board along with the Committee's report. The Committee's report shall set forth findings of fact on which the recommendation is based and a statement supporting the conclusion. The Committee shall mail a copy of its report to the applicant, and a copy of the hearing transcript shall be furnished to the applicant upon payment of reasonable charges.

The Character Committee conducted a hearing on March 30, 2015, during which Gjini, represented by counsel, testified and presented the testimony of two additional witnesses. The Committee called Mr. DeJong as a witness, but he did not participate as a Hearing Committee member.

few days before his Character Committee hearing. The district court judge determined that Gjini had not satisfied the alcohol education program requirement and gave him sixty days to complete another program at which time Gjini would need to reappear. Gjini did not supplement his Bar Application with any of this information at any time.

Prior to the Character Committee Hearing on March 30, 2015, its Chair, Benjamin S. Vaughan, discovered Gjini's Petition to Violate Probation on Case Search;[7] the Character Committee members questioned Gjini during the hearing about the omission of information related to the Petition to Violate Probation. In a split decision, months later, the Committee recommended Gjini's admission to the Bar, over the objection of Mr. Vaughan and another member of the Committee, Victor M. Del Pino.

Pursuant to Rule 5(c),[8] the State Board of Law Examiners reviewed the Character Committee's Report and notified Gjini that a hearing would be held to afford him the opportunity to support his admission. The hearing was held on December 11, 2015. Following the hearing, the Board voted unanimously to adopt the recommendation of the Character Committee that Gjini be admitted.

---

[7] Case Search provides access to information on http://casesearch.courts.state.md.us/casesearch/ from case records listed by civil, traffic and criminal cases in the State. Maryland Courts, Case Search – Frequently Asked Questions, http://mdcourts.gov/casesearch2/faq.html (June 6, 2016), (https://perma.cc/UKZ9-3666).

[8] Rule 5(c) provides in relevant part:
> (c) **Hearing by Board.** If the Board concludes after review of the Committee's report and the transcript that there may be grounds for recommending denial of the application, it shall promptly afford the applicant the opportunity for a hearing on the record made before the Committee. The Board shall mail a copy of its report and recommendation to the applicant and the Committee.

The Board relied on the findings of the Character Committee to reach its decision, but none of the findings references Gjini's failure to disclose the Petition to Violate Probation, although in the hearings before the Character Committee and the Board Gjini's failure to disclose the Petition was explored. The Character Committee Report reflected:

**A. ON-LINE POSTINGS**:

During his investigation of Mr. Gjini's application, Mr. DeJong discovered, rather serendipitously, several statements which Mr. Gjini had posted to various chat-rooms on the internet as recently as his last semester in law-school. Those postings included commentary upon martial arts videos and similar matters and are set forth, verbatim, as follows:

"This guy is a dipshit."

"Yo, shut the fuck up so we can watch the video."

"The both fight like hoes."

"The bully kid was a pussie."

"That girl is hot as fuck."

"Who is the faggot that made this video?"

"Just keep games like they are with a PS3 controller. None of this gay shit."

"Straight NUTT in that bitch."

Mr. Gjini admitted that he posted the statements, above. He admitted, further, that the statements were posted while he was in law-school and, in fact, many were placed during his last semester in law school.

While the undersigned find these postings to be troubling, we do not believe that they are of sufficient magnitude to preclude Mr. Gjini from the practice of law.

The substance and nature of the postings may reflect something of a chasm between persons of Mr. Gjini's generation and the undersigned members of the Hearing Committee. The language employed by Mr. Gjini certainly is not to be applauded and the undersigned would not encourage its use. Nonetheless, it appears no worse than that which is commonly found on the internet, and that which is regularly employed by pop-music stars and sports figures.

Further, we note that Mr. Gjini expressed what we believe was sincere regrets with respect to the use of such language in his sworn testimony before this Committee. Thus, Mr. Gjini testified as follows:

[C]ertainly, this whole process, beginning with Mr. DeJong pointing it out, was the catalyst that I think is going to make me change my ways. I've deleted every one of those comments, because I am legitimately ashamed of them. I'm not - I don't want to give off the impression that I'm trying to explain or trivialize these comments, but there is a distinction to what I meant, because it bothers me profoundly, not just in this context, but generally. Like, I almost cried when my Mom was talking, because I am not a homophobe and I'm certainly not anti-women or anything like that. And the fact that these comments can be interpreted, can be correctly interpreted as such is what bothers me and is why I'm trying to save some face. But the fact is that I made these comments and I am utterly ashamed of them.

On balance, we do not believe that the postings, however unsavory they may be, should prevent Mr. Gjini from practicing law in the State of Maryland.

**B. ALCOHOL-RELATED OFFENSES**:

Mr. Gjini admitted that he had been charged with Driving While Impaired by Alcohol in response to Question 12 (a) of his application for Admission to the Bar. He further admitted to receiving probation before judgment. He did not disclose any prior or subsequent alcohol-related driving offense.

Mr. Gjini did, however, provide a copy of his rather impressive Maryland driving record. That record reflects a number of suspensions for various reasons. Notably, it appears that Mr. Gjini's driving privileges were suspended on April 25, 2012. The suspension was described on Mr. Gjini's driving record as "A/R – Suspended – 1st Offense Alcohol Content .08 or More." The suspension was associated with ticket No. AJQ96389. The alcohol-related driving offense identified by Mr. Gjini in his application was associated with ticket No. 00000000PN0DNG. The date of that offense was August 7, 2013. This clearly followed the initial alcohol-related suspension of Mr. Gjini's driving privileges in April, 2012.

Thus, it would appear that Mr. Gjini was at least investigated for more than one alcohol-related driving offense in a relatively short period of time (roughly 18 months), the latter of which was less than a year before he made application for admission to the Bar. His driving record from the MVA contains no reference to either offense other than an entry dated August 7, 2013 (the date of the second offense) regarding an "Order of Suspension Issued - Refusal 1st Chemical Test."

With regard to the earlier of the events referenced above, Mr. Gjini testified as follows:

A. I didn't know what the stop sign was about. I did not immediately link the stop sign with the actual alcohol charge until after the second meeting when I confessed, when I told him what happened.

And I was going under the impression that we were addressing the things that I had reported and the things that I had to report, it wasn't - this was not an attempt, I mean, to hide from Mr. DeJong something that was expunged, which I didn't think I had to report anyways. I wasn't trying to steer him another way so he wouldn't catch on to me. I'm admitting it right now, even though I wasn't prosecuted.

Q. So, I want to make sure if Mr. DeJong - and I questioned him about this earlier. He makes a statement in his memorandum, which I'm sure has been provided to you at some point, "Mr. Gjini is unsure and the record does not indicate whether he was actually charged with an alcohol-related offense.

A. Yeah, I am not - I was not sure about that until afterwards. What happened was in my first charge I got a bunch of papers and I gave it to my lawyer at the time, and him and I went to court, and it was - I mean, I'm not going to say it was a blur to me, but I certainly wasn't as familiar with the process as I am now. And it's something that he said-like he came to me, my lawyer, and said, the cop didn't show up, you're free to go. I was, like, really? I was surprised. He's like, yeah. So I left.

In any event, it appears that while Mr. Gjini may have been charged with an alcohol-related offense in March, 2012, the charge was not prosecuted. He was charged a second time with an alcohol-related driving offense in August, 2013 to which he pled guilty and was granted probation before judgment. He would not have been legally entitled to such a disposition on the latter charge if he had received probation before judgment on the first charge. *See*, Md. Crim. Proc. Code Ann. § 6-220 (d)(1) (2015). Accordingly, we do not have any reason to question Mr. Gjini's explanation regarding the disposition of the first alcohol-related event. Given that that charge was never prosecuted, the simple fact that he was so charged should not serve as an impediment to his admission to the Bar.

Mr. DeJong testified that he would not have recommended against Mr. Gjini's admission to the Bar based solely upon his alcohol-related offense. We agree.

(Internal citations omitted).

9

The Character Committee Chair, Benjamin S. Vaughan, however, disagreed with his colleagues and issued separate findings and recommendations at the Character Committee level in which he stated that, "I do not believe Mr. Gjini has met his burden of proving his fitness for the practice of law and I cannot recommend his admission."[9] Mr. Vaughan found Gjini's on-line comments "patently offensive" but felt that the comments implicated First Amendment concerns such that they would not preclude his admission to the Bar. Mr. Vaughan also expressed concern that Gjini's Petition to Violate Probation was only disclosed at Mr. Vaughan's request and then only after Mr. Vaughan found it on Court Search, that Gjini's DWI occurred while he was entering his final year of law school and that Gjini had attempted to satisfy one of his conditions of the probation before judgment by taking an on-line alcohol treatment course:

> Mr. Gjini's on-line postings are patently offensive.
> I am not impressed with the fact that similar language may find its way into the lexicon of popular music or celebrity-based magazines or may resemble that which trickles from the mouths of various sports figures and

---

[9] Committee member Victor M. Del Pino also recommended against admission. Although Mr. Del Pino did not submit separate written findings and recommendations, he raised several concerns during the hearing. With regards to the Petition to Violate Probation Mr. Del Pino was concerned with the lack of communication between Gjini and his probation officer:
> [Mr. Del Pino]: So the way that I read this is that you really weren't communicating with your probation officer. I mean, is that accurate?
> [Gjini]: That is, to an extent it is accurate.

Mr. Del Pino also expressed concern that Gjini was not taking accountability for what could be construed as his lack of candor:
> So you're a college graduate, a law school graduate, and it appears as if many of your responses here to us today is to me sort of passing the buck. It's the probation officer or me didn't know this, or Mr. DeJong must have misunderstood that. And, you know, you made a statement regarding candor a moment ago.

pop-culture icons. I am not willing to have the question of character as it may pertain to the practice of law be defined by the purveyors of pop-culture.

It is not simply a statement of sanctimony to suggest that members of the legal profession should endeavor to elevate the practice of law above the transient vulgarities of contemporary society. One can only wonder how the history of this country might have fared had members of the legal profession refused to accept as somehow legitimate the culture which legalized slavery or which institutionalized segregation or anti-Semitism, all of which were accepted practices and expressions at one time, and all of which were then, and are now reprehensible. Mr. Gjini's postings continued a hideous practice of relegating certain persons within our community – in this instance, women and homosexuals – to second-class status and subjecting them to derision and exclusion. The very fact that such expressions directed at any person within our community would continue to find any degree of acceptance in our culture, pop or otherwise, might be the most compelling reason why they should not be tolerated among members of the legal profession. The legal profession cannot aspire to justice on behalf of just some members of the community to the exclusion of others. If the profession is going to serve its proper function at all, all members of the community must be secure in the belief that the law will afford justice to each of them or the profession will fail altogether. Mr. Gjini's postings were the antithesis of such a belief.

To suggest that because statements such as those posted by Mr. Gjini are not uncommon among members of his generation, Mr. Gjini should not be held to any greater moral standard is to subjugate the question of morality and character to the whims of pop-culture. I do not believe this is appropriate.

That said, as offensive as Mr. Gjini's on-line drivel may be, and as offended as I may be in reading the postings, I am equally concerned about the prospect of the State denying a citizen the right the practice the profession of his choosing based upon his speech, absent some exception to the guarantees of the First Amendment of the United States Constitution.

I note that the Court of Appeals dealt with a similar issue in the case of *Attorney Grievance Comm'n of Maryland v. Alison*, 317 Md. 523, 565 A.2d 660 (1989). In that case, the Respondent, a Maryland attorney, faced suspension of his license to practice law following a string of incidents involving his estranged wife. The Respondent's behavior was, at times, threatening and violent on a repeated basis. It also involved profane language which was directed at his wife, police officers, a Court Clerk, at least one and perhaps two judges, opposing counsel and a prosecuting attorney who refused to pursue forgery charges which the Respondent had brought against his wife.

11

The Court of Appeals found that suspension of his license to practice was appropriate. In so doing, the Court responded at length to the Respondent's claim that suspension based upon speech, however offensive, would be violative of his First Amendment rights. The Court disagreed, given the facts of that case. The Court first noted that "Resort to epithets or personal abuse is not in any proper sense communication of information or opinion safeguarded by the Constitution, and its punishment as a criminal act would raise no question under that instrument." This finding, alone, might suggest that Mr. Gjini's use of epithets on the internet could serve as the basis for precluding him from practicing law without offending the First Amendment. The Court in *Alison, supra*, went on to point out, however, that the context of Mr. Alison's profanity and use of epithets resulted in the disruption of the courts. Thus, the Court stated:

> Alison's conduct in directing epithets toward the opposing attorney in Judge Cameron's court and later in Judge Harlan's chambers is clearly inimical to the time honored standards for the conduct of attorneys. Conduct of this kind has rightfully resulted not only in disciplinary sanctions, but in attorneys being found in contempt of court.

> Moreover, conduct of this kind is prejudicial to the administration of justice. That such conduct does not at the moment of its occurrence delay the proceedings or cause a miscarriage of justice in the matter being tried is not the test. Conduct of this type breeds disrespect for the courts and for the legal profession. Dignity, decorum, and respect are essential ingredients in the proper conduct of a courtroom, and therefore in the proper administration of justice.

> . . . Where restrictions on the speech of those permitted to practice before this State's courts are necessary for their orderly functioning, and where regulations are content-neutral in restricting the time, place and manner of speech, they do not violate the First Amendment's guarantee of free speech.

*See, Attorney Grievance Comm'n of Maryland v. Alison*, 317 Md. at 536, 565 A.2d at 666 (1989)

The speech at issue, here, did not take place in a courtroom and was not directed to other attorneys, clerks, judges or police officers, unlike the speech in *Alison, supra*. It was not speech which was uttered during a legal proceeding under the auspices of professional conduct. It cannot be said to have impeded the administration of justice, per se. It is not nearly as clear in this case as it was in *Alison, supra*, that the restriction on this type of speech would be necessary for the orderly functioning of those persons practicing before the State's courts. For this reason, I am hesitant to conclude that Mr. Gjini's on-line postings, alone, would justify his preclusion from admission to the Bar.

12

That said, the speech in this case, certainly would tend to "breed disrespect for the courts and for the legal profession" if associated with an attorney, in or out of the courtroom and whether or not it was uttered in a professional setting.

Bearing those considerations in mind, the on-line postings were just one factor to be considered with regard to Mr. Gjini's application for admission to the Bar.

In addition to the postings, Mr. Gjini was arrested on two fairly recent occasions for driving while under the influence of alcohol. The first of those charges, from 2012, was not prosecuted. The second event, in 2013, while Mr. Gjini was entering his final year in law school, resulted in a guilty plea and a probation-before-judgment disposition. Thus, while Mr. Gjini was not convicted of either offense, nonetheless, he is currently on probation to the Court stemming from the criminal behavior of operating a motor vehicle while impaired by the consumption of alcohol.

As a condition of probation, Mr. Gjini was required to participate in an appropriate alcohol education program. He chose to take an on-line course. This resulted in the filing of a Petition to Violate his Probation. This Petition was prepared on December 29, 2014 and approved on December 30, 2014, some three months before the hearing in this matter. A Show Cause notice was issued on January 8, 2015. The Petition was not disclosed to the Board of Law Examiners or to Mr. DeJong. Indeed, it was disclosed to the Hearing Committee only at the request of the undersigned and then only after the undersigned found the Violation of Probation on Court-Search.

(A hearing was scheduled on June 1, 2015. We have been advised by Mr. Gjini's counsel that the Petition to Violate Probation was "dismissed due to Mr. Gjini's completing all that was required of him." His counsel provided additional documents with respect to Mr. Gjini's attendance at AA and MADD meetings, his participation in, and completion of an alcohol counseling program and the dismissal of the Petition to Violate Probation. Those additional documents have been included in the exhibits attendant to this hearing.)

I am troubled by the fact that Mr. Gjini's involvement with the criminal justice system occurred while he was about to begin his final year in law school. I am troubled by the fact that his approach to the requirements of his probation resulted in a petition to violate his probation. His approach to the requirements of his probation - to take an on-line alcohol education course rather than participate in a program with a live instructor/counselor - suggests a cavalier attitude toward the instructions of the Court and the requirements of Mr. Gjini's probation. This is far less than I would expect of a law-school graduate making application for admission

13

to the Bar while on probation to the Court for a serious driving - and criminal - offense.

I am equally troubled that Mr. Gjini did not disclose the fact that he was facing a charge of violating his probation until that charge was found by the undersigned. This lack of candor is less than I would hope to see in an applicant for admission to the Bar who bears the burden of proving his character and moral fitness for the practice of law. *See, e.g., In the Matter of the Application of Gregory John Strzempek for Admission to the Bar of Maryland*, 407 Md. 102, 962 A.2d 988 (2008).

All of the factors combined lead me to conclude that Mr. Gjini has not borne his burden of proving his character and moral fitness. Accordingly, I cannot recommend his admission to the Bar.

(Internal citations omitted.)

Mr. Gjini's failure to disclose the Petition and its attendant hearing, which had been discovered by Mr. Vaughan, had been the subject of questioning of Gjini by his counsel at the hearing:

> [GJINI'S COUNSEL]: Okay. And now with regard to your current DUI, you have an outstanding violation of probation; is that correct?
> [GJINI]: Yes, sir.
> [GJINI'S COUNSEL]: You did have a hearing on March the 23rd, 2015, just a few days ago?
> [GJINI]: Yes, sir.

Gjini did not supply, however, the Character Committee with any documentation regarding his hearing in the district court nor with a copy of Gjini's Petition to Violate Probation; the latter was only provided at the request of Mr. Vaughan during the hearing. The issue of Gjini's failure to disclose the Petition also was raised and explored during Gjini's testimony when Nancy Fey, a member of the Character Committee, asked Gjini if he had been aware of his obligation to supplement his Bar application:

> [MS. FEY]: Are you aware that the application is continuing in nature and that you have an obligation to report situations, so that when this came up

you at the very least could have reported it to Mr. DeJong or perhaps Mr. Vaughan, the violation of probation situation?

[CHAIRMAN VAUGHAN]: Actually, the requirement is that the application be amended at the Board, so the notification would have to go to the Board.

[GJINI]: Okay. No, I wasn't aware of that. I told [my attorney] about it, and I figured – he said that it would have to be addressed at this hearing, so I figured it was all taken care of. You know, not taken care of, but that it would be addressed here.

And at first, the first date was the same day, I had – I would have had both hearings the same day, and I figured since he said that it would have to be addressed here, I figured that if nothing was pushed I could have sorted that out and come here with it sorted out.

During the hearing before the State Board of Law Examiners, Gjini's counsel raised the issue of Gjini's failure to disclose the Petition to Violate Probation:

[GJINI'S COUNSEL]: The other issue that came up regarding the candor in a bar admission matter is the issue with the violation of probation that Mr. Gjini was – he was – there was a petition for a violation of his probation that the character – at the character committee was confused as to why he did not mention it to them prior to the hearing. And if you can elaborate on the issue as to what happened – why was there a violation of probation and what you could – why it was not disclosed to the character committee prior to the hearing that took place on March 30th?

* * *

[GJINI]: Right. So as soon as I received the letter – my violation of probation hearing was actually scheduled the same day as my initial interview, but they were both postponed because there was that huge snow storm last year that we had, they were both postponed, but two different days. So as far as I was concerned, I was going to go to my probation hearing first and then go to my character and fitness, so I figured that – I was under the impression this was all some sort of huge misunderstanding, because like I said earlier, Ms. Howell[10] would always come up with a different reason as to why my program wasn't good enough, culminating with the judge needs to okay it because it's on-line.

So I sent her all the information . . . and I thought that she kind of realized that I shouldn't be violated. And I even sent her an e-mail saying, oh, like are we still going to court, because I thought that it was going to be,

_____

[10] Talaya Howell was Gjini's probation officer.

15

like, totally resolved prior to my court date, and that was my goal because obviously I don't want to go to court for something that I didn't think that I did. And she said, yeah, something to that effect, but I still have to show up to court because the judge has to approve the course.

So that day I went to court, the day came after it was postponed. The date came and I went to court and this was probably like April, like early April, April 1st or maybe, like, late March. Then I went there with my documents all by myself and I thought that it was just going to be, here you go, Judge, like I completed the course, so this is baseless, basically. And Ms. Howell said, oh like, to the judge, it was like oh, Your Honor, I have asked him repeatedly for this and that and he finally gave it to me, et cetera, et cetera. So even she – she wasn't really against me either, but the judge essentially concluded that because my course was online that it might be like a bogus course, so to speak, because I think the impression that he got was you could just click play, and go do something else and then come back and you'd be done with the course, but the course actually had like a safeguard for that. . . . But the judge ultimately said that it wasn't a good course.

Additional questions relative to Gjini's failure to disclose were raised by Matthew T. Mills, a member of the Board, to which Gjini responded that his assumption was that he did not have to disclose the Petition:

[MR. MILLS]: And can you explain to me again, I'm confused as to why the committee felt that you had not been up front about the violation?
[GJINI]: I mean, I guess the committee wanted me to edit my – this is my best guess, I'm not sure, but I think they wanted me to edit my application to I guess, say that I'd been charged with a violation of probation, but I was under the impression . . . that I don't have to make this change until the matter is resolved[.]
* * *
[MR. MILLS]: Yeah, I mean, I – so you assumed that because you had not actually been found guilty of the violation that you didn't have to tell us?
[GJINI]: Well, I assumed that and also I assumed that it would be withdrawn and that it wasn't going to be something that I would even have to go to court for.
* * *
[MR. MILLS]: I guess what I'm trying to figure out is if you read our application, it is abundantly clear that we basically want to know everything about you and everything you have ever done and anything and everything that anyone has ever said about you, so why would you make

16

this assumption? Even if it was withdrawn, even if it was a complete and total mistake, why would you assume that you didn't have to tell us?

[GJINI]: Well, I can certainly accept that that assumption was incorrect, absolutely I definitely should have, but I didn't think that I had done anything wrong and I didn't think that it was going to be an issue at all. And I also told my lawyer and he said, oh we'll just talk about it at the character and fitness hearing. So I figured that it was going to be addressed there.

[MR. MILLS]: Okay.

[GJINI]: Sorry.

Although an issue, obviously, before the Board the Board did not issue any findings relative to Gjini's failure to disclose his Petition to Violate Probation and its attendant proceedings.

During the show cause hearing before this Court,[11] Gjini's counsel explained Gjini's failure to disclose the Petition as follows:

---

[11] Rule 5(c) and (d) provide in relevant part:

(c) **Hearing by board**. * * * If the Board decides to recommend denial of the application in its report to the Court, the Board shall first give the applicant an opportunity to withdraw the application. If the applicant withdraws the application, the Board shall retain the records. Otherwise, it shall transmit to the Court a report of its proceedings and a recommendation as to the approval or denial of the application together with all papers relating to the matter.

(d) **Review by Court**. (1) If the applicant elects not to withdraw the application, after the Board submits its report and adverse recommendation the Court shall require the applicant to show cause why the application should not be denied.

(2) If the Board recommends approval of the application contrary to an adverse recommendation by the Committee, within 30 days after the filing of the Board's report the Committee may file with the Court exceptions to the Board's recommendation. The Committee shall mail copies of its exceptions to the applicant and the Board.

(3) Proceedings in the Court under this section shall be on the records made before the Character Committee and the Board. If the Court denies the application, the Board shall retain the records.

He was aware that you have to update your Bar application until it is approved by this Court. However, he was under the impression, and this is where he might have made a calculated error in the fact that, he felt that it was just a mistake—the probation of violation was a mistake. . . . In hindsight Mr. Gjini made an error in not notifying the Character Committee right away of the possibility of a violation of probation even though it was a mistake—that was a calculated error on his part.

## II. Discussion

Based upon our review of the record, contrary to the recommendation of the State Board of Law Examiners based upon the omission of any consideration to address Gjini's failure to disclose his Petition to Violate Probation and its attendant Show Cause Order and the hearing that followed, we determine that Gjini does not possess the present good moral character to practice law in Maryland; Gjini completely failed to supplement his Bar application with any of the facts developed solely through the efforts of Mr. Vaughan, the Chair of the Character Committee.[12]

We are not persuaded that Gjini's failure to disclose is mitigated in any way by his various excuses which varied from initially not knowing he had to disclose, then with his assumption that he did not have to disclose and finally, that his failure was a calculated error. We have consistently stated that disclosure on the Bar application and supplementation is mandatory:

[W]e emphasize that disclosure on the Bar application and immediate and full supplementation after an incident warranting exposition is mandatory,

---

[12] The Court, consistent with its practice, has recounted, in full, the procedural history of the character committee proceedings, including the discovery of the applicant's electronic commentary and the character committee's expressions of concern. The Court's decision to deny Gjini's admission to the Bar, however, is not, in any way, premised on that commentary.

not voluntary. It is not the choice of a candidate for admission whether to disclose and under what conditions.

*Application of Strzempek*, 407 Md. 102, 113, 962 A.2d 988, 994.

In *Application of Strzempek*, 407 Md. at 115, 962 A.2d at 995, we determined that disclosure must be made "immediately and fully" and that a delay in disclosing relevant matters may result in the denial of admission to the Bar. Strzempek pled guilty to driving while intoxicated after submitting his application for admission to the Bar and subsequently served four days in jail. Strzempek then failed to supplement his admission application and only disclosed his arrest several months later after receiving his Bar Examination results and Affirmation Form. Strzempek argued that he intended to eventually disclose the conviction, but we stated that, "His choice not to disclose in the face of these known obligations, however, impinges upon his character and fitness to practice law, irrespective of any purported ultimate intent" and denied his application for admission to the Bar of Maryland. *Id.* at 114, 962 A.2d at 995. We explained that "absolute candor is a requisite for admission to the Maryland Bar" and this requirement includes "immediate and full disclosure":

> Question [20] on the Bar Application clearly emphasizes the requisites of immediate as well as full disclosure. The Rule governing the purpose of the Character Committee interview, which charges its attorney members with "verifying the facts stated in the questionnaire . . . and making any further investigation . . . necessary or desirable," also is dependent upon immediate and full disclosure by the applicant, for otherwise, the process of investigation is stymied. . . . In our recent cases involving bar admission, especially, *Application of Stern*, 403 Md. at 634, 943 A.2d at 1258, and *Application of Brown*, 392 Md. at 58, 895 A.2d at 1058, we also have emphasized that, "it is a given that good moral character includes truthfulness and candor, and *absolute candor is a requisite of admission to the Maryland Bar*."

19

*Id.* at 113-14, 962 A.2d at 994-95 (emphasis in original).

Gjini made a choice not to disclose not only the Petition to Violate Probation but the court proceedings that followed. We are only able to evaluate Gjini's lack of candor because a Character Committee member was doing his "job" and found information that was material to the evaluation of Gjini's character and fitness. Gjini never supplemented his Bar application with any of the information related to a process in which his probation before judgment was the subject of a Petition to Violate Probation and in which a hearing before a district court judge was held. Gjini's disregard of his obligation to disclose, whether because of ignorance or calculated error does not warrant his admission to the Bar of Maryland; Gjini has failed to bear the burden to prove his present good moral character and fitness, and we deny his application for admission to the Bar of Maryland.

**IT IS SO ORDERED.**

Argued: May 10, 2016

IN THE COURT OF APPEALS

OF MARYLAND

---

Misc. Docket No. 32

September Term, 2015

---

IN THE MATTER OF THE APPLICATION
OF OTION GJINI TO THE BAR OF
MARYLAND

---

Barbera, C.J.
Greene
Adkins
McDonald
Watts
Hotten
Battaglia, Lynne A., (Retired,
  Specially Assigned),

JJ.

---

Dissenting Opinion by Adkins, J., which
Barbera, C.J. and McDonald, J., join.

---

Filed: July 7, 2016

Respectfully, I dissent from the decision of the Majority to deny admission to Mr. Gjini to the Maryland Bar for lack of character and fitness. The Majority finds offensive his failure to disclose to the State Board of Law Examiners the fact that he received a Petition to Violate Probation and an attendant Show Cause Order after he chose to take an online course, instead of an appropriate in person course, to satisfy a condition of his probation.

The State Board of Law Examiners has recommended that we admit Mr. Gjini, notwithstanding his Petition to Violate Probation and the hearing that followed. The Board unanimously adopted the recommendation of the Character Committee for the Seventh Appellate Circuit. The Character Committee concluded as follows:

> The undersigned are satisfied that this testimony confirms a proper degree of contrition and understanding as to the impact of such behavior upon one's character and fitness for the practice of law. We do not believe the charges or the conduct behind the charges should prevent Mr. Gjini from entering the practice of law.

Report and Recommendation of the Hr'g Comm., In the Application for Admission to the Maryland Bar of Otion Gjini 7 (2015).

I agree with the Board of Law Examiners and the Character Committee that he should be admitted. His alleged violation of probation—the taking of an online course rather than participating in an appropriate course in person—is a rather minor transgression, and less consequential than the conduct in *In the Matter of the Application of Gregory John Strzempek for Admission to the Bar of Maryland*. 407 Md. 102, 104 (2008) (considering the applicant's failure to update his application to reflect that he pled

guilty to driving while intoxicated).  Although Mr. Gjini clearly was under the obligation to supplement his Application for Bar Admission, not doing so under these circumstances should not constitute the basis for denying him the privilege of practicing law for which he has studied.

Chief Judge Barbera and Judge McDonald have authorized me to state that they join in the views expressed in this dissenting opinion.